SCOVILL MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29854, 30238.   Promulgated January 20, 1932.

*H. A. Mihills, C. P. A.*, for the petitioner.

*John D. Foley, Esq.*, and *James C. Maddox, Esq.*, for the respondent.

266

OPINION.

SMITH: 1. The first question presented by this proceeding is whether the petitioner made a claim for the deduction of an amount representing amortization of war facilities provided for by paragraph (8) of subdivision (a) of section 234 of the Revenue Act of 1918, before June 15, 1924. (See section 1209, Revenue Act of 1926.) Petitioner claims that it did; the respondent, that it did not.

Section 234 (a) (8) of the Revenue Act of 1918 permits a corporation to deduct from gross income:

In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, * * * there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities * * * as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. * * *

Corporations making tax returns under the provisions of the Revenue Act of 1921 were entitled to make a corresponding deduction from gross income "for any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable year 1918, 1919, 1920, or 1921)."

Section 1209 of the Revenue Act of 1926 provides:

The deduction provided by paragraph (9) of subdivision (a) of section 214 or by paragraph (8) of subdivision (a) of section 234 of the Revenue Act of 1918 may (notwithstanding any provisions of the Revenue Act of 1921) be allowed for the taxable year 1918, 1919, or 1920 if claim therefor was made before June 15, 1924.

Article 185 of Regulations 45 provides in part as follows:

*Amortization period.*—The amortization allowance shall be spread in proportion to the net income (computed without benefit of the amortization allowance) between January 1, 1918 (or if the property was acquired subsequent to that date, January 1st of the year in which acquired) and either of the following dates:

(*a*) If the claim is based on (1) of article 184, the date when the property was or will be sold or permanently discarded as a war facility; or (*b*) if the claim is based on (2) of article 184, the actual or estimated date of cessation of operation as a war facility.

The purpose and legislative history of section 234 (a) (8) of the Revenue Act of 1924 are set forth in much detail in *G. M. Standifer Construction Corporation*, 4 B. T. A. 525. See also *Moore Investment Co.*, 2 B. T. A. 579; *Walcott Lathe Co.*, 2 B. T. A. 1231. In *Manville Jenckes Co.*, 4 B. T. A. 765, we said, referring to the above mentioned provision:

This provision of the statute is a relief provision, and, under the well known rules of statutory construction, if there is any doubt concerning its meaning, it must be liberally construed in favor of the taxpayer. * * *

In *United States Refractories Corporation*, 9 B. T. A. 671, we stated:

* * * The amortization provision is a relief measure, and should be liberally construed. A reading of the Act convinces us that the clause, "if a claim therefore was made" refers to and modifies the phrase "reasonable deduction for amortization." The making of the claim at the time of filing the return puts the Government on notice of the existence of the claim. Its

duty then is to determine what constitutes a reasonable deduction. It is conceivable that a claim for a reasonable deduction for the amortization of war facilities set up as a lump sum with no itemization might be held to satisfy the provision that " a claim therefor be made." There is nothing in the Act specifically requiring itemization or forbidding amendment at any time before final settlement. We are satisfied that petitioner, having made claim for a reasonable deduction for amortization at the time of filing its return, may properly be allowed to amend its claim at the time of filing a petition with the Board, and may include items not listed in its original claim.

Clearly, under section 234 (a) (8) of the Revenue Act of 1918 the petitioner is entitled to an allowance for amortization of war facilities in the computation of tax liability for the years 1918 and 1919. If it were not for the provisions of the 1921 Act and the 1926 Act, above quoted, no question could arise but that the petitioner is entitled to a deduction for amortization of war facilities in the determination of the deficiencies for 1918 and 1919. The respondent contends, in the first instance, that the petitioner abandoned its claim for amortization, so far as its return for 1918 is concerned, by having filed an amended return for 1918 without specifically claiming any deduction for amortization and, so far as the 1919 return is concerned, without claiming any deduction specifically for amortization in the return filed. The evidence of record shows, however, that the petitioner never abandoned its claim for an amortization deduction of its war facilities. It had made a claim for amortization in its original return for 1918 and that claim was under adjustment by the Commissioner at the time it filed the amended return for 1918. One Van Pelt, the head of the Amortization Section of the Income Tax Unit, permitted the petitioner to deduct from gross income in the amended return filed for that year, in lieu of any deduction specifically for amortization, the cost of certain additions to its plant and equipment which had been charged as expense items in its books of account. It was clearly understood between the representatives of the Commissioner and the petitioner that its amortization claim would be thoroughly investigated and that the final determination of tax liability would await such investigation and determination. The amended return for 1918 was filed in January, 1920, and at the same time or a little later the petitioner prepared and filed its original return for 1919. It was the recollection of the then secretary of the company, now the treasurer, that the 1919 return was prepared upon the same basis as the amended return for 1918. In other words, the cost of certain additions and improvements to its plant and equipment expensed upon its books of account were claimed as deductions from gross income in lieu of any specific deduction for amortization.

In the circumstances of this case we think it is immaterial to determine whether the petitioner made any claim for amortization of war facilities in its income and profits-tax return for 1919. In any event, by the regulations of the Commissioner (article 185, Regulations 45), the amortization allowance is required to be spread over the amortization period in accordance with the net income assignable to each taxable period within such amortization period. In *United States Refractories Corporation, supra,* we held that it was not inconsistent for a petitioner before this Board to amend its claim for amortization allowance and to claim amortization upon other additions than those involved in the amortization claim filed with the Commissioner.

An inspection of section 1209 of the Revenue Act of 1926 shows that there is no requirement that a claim for amortization must be filed in connection with each of the tax returns for 1918, 1919, and 1920, in order that a deduction for an amortization allowance may be made in such returns. The provision was apparently put into the 1926 Act for the purpose of clarifying the provision contained in section 234 (a) (8) of the Revenue Act of 1921, namely, "(if claim therefor was made at the time of filing of return for the taxable year 1918, 1919, 1920 or 1921)." Congress desired to make it entirely clear that claims for amortization under the Revenue Act of 1918 were not to be denied merely because claim therefor was not made at the time of the filing of the return. The statute simply requires that a claim for amortization allowance must be made before June 15, 1924. The petitioner made its claim for amortization prior to that date and it has never abandoned such claim. The Commissioner has determined the amount of the additions made by the petitioner in 1918 and 1919 which are subject to an amortization allowance. The allowance should be spread over the amortization period beginning January 1, 1918, in accordance with the stipulation of the parties.

2. The second point in issue is whether the petitioner is entitled to compute the depreciation allowances for 1918 and 1919 upon additions to plant and equipment made during those years at the same rates as upon like assets owned at the beginning of each year, or at only one-half of those rates, as contended by the respondent. At the hearing of this proceeding counsel for the petitioner stated:

The petitioner at no time maintained a reserve for depreciation upon its books, but instead credited the depreciation directly to the asset, and then applied the depreciation rates to that declining balance. In connection with the negotiations which have previously been referred to relating to 1917 and prior years, depreciation was one of the important questions and at that time parties agreed on the rates of depreciation applicable to the various properties and applied those rates to the declining balance at the close of the year 1917, for

the year 1917. The understanding was that for subsequent years the same procedure would be followed; therefore the depreciation has been computed by petitioner upon the declining balance at the close of each taxable year. * * *

The petitioner then adduced evidence to the effect that the total amount of depreciation provided upon its books of account for the period 1868 to January 1, 1918, was $8,006,571.38, and that the residual value of depreciable assets at January 1, 1918, represented by cost less the depreciation which was charged directly against the assets, was $7,752,768.29. It was also testified that the depreciation charged off on the books of account for the four-year period 1915 to 1918, inclusive, was $4,616,983.20 in excess of the amounts deducted from gross income for depreciation on the tax returns for those years. The evidence was all directed to the point that the allowance for depreciation at rates allowed by the Commissioner upon the declining balances at the beginning of each of the years 1918 and 1919 and at one-half of those rates on additions in each of those years was not ample to cover depreciation and obsolescence in those years. It was contended that in view of the fact that the declining balances at the beginning of those years represented much less than the cost of the assets against which the rates were applied, the allowance made by the respondent was not adequate.

Although the petitioner's original returns for 1918 and 1919 were offered in evidence and although those returns referred to depreciation schedules accompanying the returns, such depreciation schedules were not attached to the returns offered in evidence and we have no means of knowing the bases which the petitioner and the respondent used in computing the depreciation allowance. However, there is attached to the amended return for 1918 the depreciation schedule used by the petitioner in computing the depreciation allowance for 1918 in the amount of $1,684,313.74, which it is insisted in this proceeding is the correct allowance for depreciation for 1918. Although the testimony of the witnesses indicated that the declining balance on depreciable assets at the beginning of 1918 was $7,752,768.29, and that such declining balance was the basis for the computation of the depreciation allowance, it is to be observed that this is not the basis used by the petitioner in computing its depreciation allowance. The depreciation schedule referred to shows that the balance at January 1, 1917 (including $261,701.80 for land), was $9,440,865.11, to which were added additions in 1917 of $3,093,198.68, for the purpose of arriving at the total on which 1917 depreciation was calculated, namely, $12,534,063.79. The above figure includes $308,171.45 as cost of land, upon which no depreciation was claimed. From the $12,534,013.79 referred to above was deducted $87,327.99 for sales and scrap during 1917. To the remaining $12,446,735.80 was added $4,220,753.78 representing additions in 1918 for the purpose of

arriving at the basis of $16,667,489.58 on which the 1918 depreciation allowance of $1,684,313.74 was calculated. It is seen from the foregoing that the depreciation allowance was not computed by the petitioner upon the declining balance at January 1, 1918, plus the additions in 1918, but upon a substantially higher figure. The respondent has apparently computed his depreciation allowance upon the same basis as was used by the petitioner in computing its depreciation allowance. Apparently all that the respondent has done is to allow depreciation at the rates contended for by the petitioner upon the balances shown by the depreciation schedule at January 1, 1918, and to allow depreciation at one-half of those rates upon additions made during the year 1918. The reason for allowing depreciation upon additions made during the year at one-half the rates applied for the full year is that, in the absence of evidence to the contrary, the additions are presumed to have been acquired at the middle of the year and been subject, on an average, to wear and tear for only a six-months period.

Although the testimony of the witnesses was to the effect that the depreciation allowance made by the respondent was not adequate, we are of the opinion, upon an examination of the depreciation schedule attached to the 1918 amended return, that the testimony of the witnesses was upon the assumption that the depreciation allowance was based upon the declining balance as shown by petitioner's books of account at January 1, 1918. Such, however, was manifestly not the fact.

We have heretofore held, in *Robert P. Hyams Coal Co., Ltd.*, 1 B. T. A. 217, that " Depreciation for 1918 and 1919 computed upon the average balance of depreciable property during each year rather than upon the balance at the close of each year was correctly so computed." In that case the petitioner contended that " additions made to the plant account during the year should be depreciated as though they had been owned by the taxpayer at the beginning of the year." The Commissioner had based the depreciation allowance upon the average amount of the plant account throughout the year rather than upon the amount of the plant account as it existed at the close of the year. We sustained the Commissioner's contention. For lack of proof that the depreciation allowance computed by the respondent in the instant proceeding is not adequate his determination of the depreciation allowance is sustained.

In the computation of the deficiences the respondent allowed depreciation in the amount of $368,617.37 for 1918, and in the amount of $217,653.78 for 1919, upon assets which were claimed by the petitioner and which were, according to the stipulation filed, the proper subjects of allowances for amortization of war facilities, provided the petitioner's contentions with respect to the filing of a claim for

amortization are sustained by the Board. Since in the opinion of the Board the petitioner timely filed a claim for amortization and was entitled to deduct an allowance for amortization of war facilities for both 1918 and 1919, the cost of such war facilities is not subject to any depreciation allowance. Such fact should be taken into account in the recomputation of the deficiences.

3. The third point in issue is whether the petitioner is entitled to deduct from gross income as an ordinary and necessary expense of carrying on its business the cost of certain work performed upon the Chestnut Hill dam and reservoir during each of the taxable years. The petitioner contends that these expenditures were necessary to insure to it an adequate supply of water during the performance of war contracts of 1918 and 1919, and that the effect of the expenditures was not to increase materially the asset value of its properties. The Chestnut Hill dam was located upon property of a corporation in which it was a stockholder, and not upon its own property.

The taxing statute permits the deduction from gross income of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." (Section 234 (a), Revenue Act of 1918.) The act prohibits the deduction in the computation of net income of "Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." (Section 215 (b), Revenue Act of 1918.)

The line of demarcation between expenditures made in the operation of a trade or business and for improvements is not always sharply defined in accounting practice. In the instant case the petitioner did not consider in its accounting that the amounts expended were capital items; they were therefore charged to expense. It is to be noted, however, that they were not expenditures which would recur. For its own benefit the petitioner reconstructed the Chestnut Hill dam. It did not merely repair the dam. The work done was an improvement of the dam. The reservoir would thereafter afford an adequate supply of water for the petitioner for an indefinite term of years in the future, even if the plant should be operated on a 24-hour basis. In the light of such facts we are of the opinion that the respondent has properly regarded the expenditures in the reconstruction of the dam as capital expenditures and not as expenses. He has allowed the deduction during the taxable years of an amount for depreciation upon the dam. His treatment of the expenditures is approved and his action in disallowing the cost of the reconstruction as an expense item is sustained.

4. The final point raised by this proceeding is whether the deficiency for 1918 is barred by the statute of limitations. The respond-

ent does not contend that any portion of the deficiency which has been determined by him for 1918 is collectible, except such portion thereof as was assessed on the March, 1924, list in the amount of $253,373.25. The respondent is protected in the collection of this deficiency by the surety bond filed in connection with the claim in abatement. Section 279 (a) of the Revenue Act of 1924. *United States* v. *Barth Co.*, 279 U. S. 370.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*